## UNITED STATES DISTRICT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WESTERN ILLINOIS SERVICE COORDINATION; CENTRAL ILLINOIS SERVICE ACCESS; DAYONE PACT; and F.L., by his guardian and next friend, JEANETTE GATHMAN, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No.  19-3127 |
| v. | ) ) | |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES; GRACE B. HOU, Secretary of Illinois Department of Human Services; DIVISION OF DEVELOPMENTAL DISABILITIES; KATHLEEN R. WARD, Acting Director of IDHS-DDD; GARY KRAMER, Chief Accountability Officer of IDHS-DDD, BOBBY GILMORE, Bureau Chief of Reimbursements and Program Support for IDHS-DDD, and MELISSA WRIGHT, Former Director of IDHS-DDD, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Western Illinois Service Coordination, Central Illinois Service Access, DayOne Pact, and F.L. through his next friend and guardian Jeanette Gathman, and through their attorneys, bring this action for declaratory and emergency injunctive relief against Defendants and in support thereof state the following:

## INTRODUCTORY STATEMENT

1.      This civil action is brought pursuant to 42 U.S.C. § 1983 to vindicate rights secured by the federal Medicaid statutes and implementing regulations. Plaintiffs seek to join related Illinois state law claims arising under the Grant Accountability and Transparency Act ("GATA"),

30 Ill. §§ 707/1 – 708/99, and the Illinois Administrative Procedures Act ("IAPA"), 5 Ill. Comp. Stat. 100/5-5, and its implementing regulations.

2.     This action arises out of a Notice of Funding Opportunity ("NOFO") for Independent Service Coordination ("ISC") grants issued by Defendants Illinois Department of Human Services ("IDHS") and the Division of Developmental Disabilities ("DDD") on September 10, 2018. (*See* NOFO Ex. A.)

3.     Plaintiffs Western Illinois Service Coordination, Central Illinois Service Access, and DayOne Pact are ISC agencies that have contracted with the State of Illinois for the past several decades to provide case management and coordination services to persons with developmental disabilities, like Plaintiff F.L.

4.     Plaintiffs seek declaratory and injunctive relief to protect consumers' access to – and ISCs' own ability to provide – these critical case management services. Defendants' actions violate Section 1396a(a)(23) of Title 42 of the United States Code ("Medicaid freedom of choice provision") because, by utilizing a competitive, selective bidding scheme, Defendants prevent ISC consumers from receiving services from the qualified, willing provider of their choice.

5.     Moreover, Defendants adopted the policies and procedures used to implement this funding scheme without going through the formal rulemaking process, as required by GATA, 30 Ill. Comp. Stat. § 708/90, and the IAPA, 5 Ill. Comp. Stat. 100/5-5.

6.     Consequently, Medicaid providers and consumers, as well as lawmakers, did not have the opportunity to review and comment on the policies and procedures adopted within the NOFO ISC. These policies and procedures radically altered the way that ISC funding awards would be made going forward. As such, the NOFO ISC and all administrative contracts resulting from the issuance thereof should be held invalid, void, and unenforceable.

7.    Unless enjoined immediately, new ISC provider agreements, issued pursuant to the unlawful NOFO ISC, will take effect on July 1, 2019, and all ISCs that were not awarded funding under the NOFO ISC will be immediately disqualified from providing home and community-based case management services to the communities they have served for over 25 years. Defendants' actions will cause significant and irreparable harm to Medicaid consumers across the State, including Plaintiff F.L., who will lose the provider of their choice and will be forced to work with an ISC agency and case manager they did not choose.

## JURISDICTION

8.    Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1331 to decide and hear claims under federal law. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rule 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

9.    Plaintiffs invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear and decide Plaintiffs' claims under Illinois state law.

## VENUE

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

**A.    Plaintiffs**

11.    Plaintiff Western Illinois Service Coordination ("WISC") is a 501(c)(3) non-profit, Independent Service Coordination ("ISC") agency located at 509 North Lafayette Street, Suite 203 in Macomb, Illinois. Plaintiff WISC brings this lawsuit on behalf of itself and its Medicaid consumers.

12.    Plaintiff Central Illinois Service Access ("CISA") is a 501(c)(3) non-profit, ISC agency located at 101 Madigan Drive, Lincoln, Illinois. Plaintiff CISA brings this lawsuit on behalf of itself and its Medicaid consumers.

13.    Plaintiff DayOne PACT ("DayOne") is a 501(c)(3) non-profit, ISC agency located at 750 Warrenville Rd., Suite 300 Lisle IL 60532. Plaintiff DayOne brings this lawsuit on behalf of itself and its Medicaid consumers.

14.    Plaintiffs WISC, CISA, and DayOne will be referred to hereafter as the "ISC Plaintiffs."

15.    Plaintiff F.L. is an Illinois resident and Medicaid patient and obtains his services through WISC and desires to continue to do so. He sues through his guardian, Jeanette Gathman.

**B.    Defendants**

16.    Defendant Illinois Department of Human Services ("IDHS") is a state agency that was created in 1997 as part of an effort to reorganize and coordinate services between state agencies that provide social services. IDHS currently oversees five divisions including the Division of Developmental Disabilities ("DDD"). 20 ILL. COMP. STAT. 1305/1-15. DHS is named only as a Defendant in Count II.

17.    Defendant Grace B. Hou is the current Secretary of IDHS and is considered the head of the state agency. Ms. Hou is responsible for directing and overseeing all of the divisions and directors of IDHS, including the Division of Developmental Disabilities and its directors. *See* 20 ILL. COMP. STAT. 5/5-20; 20 ILL. COMP. STAT. 5/5-105; 20 ILL. COMP. STAT. 1305/1-15. Ms. Hou is sued in her official capacity.

18.    Defendant Division of Developmental Disabilities ("DDD") is a division within DHS and is responsible for the delivery of services and supports for persons with developmental

disabilities. 20 ILL. COMP. STAT. 1710/1710-10. DDD is named only as a Defendant in regards to Count II.

19.     Defendant Kathleen R. Ward is the Acting Director of DDD and is responsible for carrying out the duties of the division. Ms. Ward is sued in her official capacity.

20.     Defendant Gary Kramer is the Chief Accountability Officer for Defendant DHS and appears to have been appointed as the Appeals Review Officer ("ARO") to review ISC Plaintiffs' administrative appeals in this case. Mr. Kramer is sued in his official capacity.

21.     Defendant Bobby Gillmore is the Bureau Chief of the Bureau of Reimbursement and Program Support for DDD and is responsible for the oversight of contracts, grants and fiscal management of the bureau.  Mr. Gilmore is sued in his official capacity.

22.     Defendant Melissa Wright is the former Director of DDD was responsible for carrying out the duties of the division. Ms. Wright is sued in her official capacity.

## BACKGROUND

23.     In 1992, the Illinois legislature adopted a law directing the State's social service agencies to establish an effective, integrated system for delivering services to persons with developmental disabilities. 20 ILL. COMP. STAT. 1705/18.2.

24.     Over the next several years, the State began contracting with several non-profit organizations, each from different geographic regions across Illinois.

25.     According to IDHS-DDD, these organizations, referred to as Independent Service Coordination ("ISC") agencies, "serve as the primary connection between individuals (and guardians) who are seeking or receiving developmental disability services and [IDHS-DDD]." (Ex. A at 2.)

26.    ISC agencies contract with the State to provide a range of services to persons with developmental disabilities, including but not limited to "outreach, pre-assessment screening ("PAS") services, eligibility determinations, management of the Prioritization of Urgency of Need of Services ("PUNS") database, case management (including ensuring informed choice, plan development and monitoring), and coordination of service delivery from other sources." (Ex. A at 2.)

27.    As of July 1, 2018, there were 17 ISC agencies operating in 17 regions throughout the State. Most of these ISC agencies have been in existence since the early 1990s and have been the only provider of case management coordination services to persons with developmental disabilities residing in their region.

28.    On September 10, 2018, Defendants IDHS and DDD posted a Notice of Funding Opportunity ("NOFO") for ISC agencies.  (*See generally* Ex. A.)

29.    This was the first time Defendants IDHS and DDD sought to fund ISC services through a competitive bidding/NOFO process.

30.    Prior to this ISC NOFO, all ISC funding was provided through a non-competitive, annual fiscal year renewal process referred to as a "Community Service Agreement."

31.    ISC Plaintiffs' contracts with the State of Illinois for ISC funding had been renewed through this process every year for decades.

32.    The ISC NOFO states no federal funding is used to fund the grants, but that directly contradicts other information published by IDHS, which makes it clear that the services provided under the ISC NOFO are funded at least in part by federal Medicaid funds.

33.     Defendants do not have the authority to subject federal Medicaid funds to the requirements specified in the ISC NOFO, or at the very least, have not sought and obtained approval to do so from the federal Centers for Medicare and Medicaid Services (CMS).

## THE MEDICAID PROGRAM

**A.     The Medicaid Statute**

34.     The Medicaid program, established under Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq*., pays for medical care for eligible needy people. A state may elect whether to participate. If it chooses to do so, it must comply with the requirements imposed by the Medicaid statute and by the Secretary of the U.S. Department of Health and Human Services ("HHS") in his administration of Medicaid. *See generally* 42 U.S.C. § 1396a(a)(1)-(83).

35.     To receive federal funding, a participating state must develop a "plan for medical assistance" and submit it to the Secretary of HHS for approval. 42 U.S.C. § 1396a(a).

36.     Among other requirements, the State plan must provide that: "[A]ny individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A).

37.     For decades, the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that administers Medicaid, has repeatedly interpreted the "qualified" language in Section 1396a(a)(23) to prohibit states from denying access to a provider for reasons unrelated to the ability of that provider to perform Medicaid-covered services.

38.      The purpose of the free choice provision is to allow Medicaid consumers the same opportunities to choose among available providers of covered health care services as are normally

offered to the general population. Ctrs. For Medicare & Medicaid Servs., CMS Manuals Publication #45, State Medicaid Manual § 2100.

## B.     HCBS Waivers

39.     Under the Omnibus Budget Reconciliation Act of 1981 ("OBRA"), Congress amended Section 1915(c) of the Social Security Act and authorized the waiver of certain federal requirements to enable states to provide home or community-based services ("HCBS") to individuals who would otherwise require institutional services reimbursable by Medicaid. *See* 42 U.S.C. § 1396n(c).

40.     Home or community-based services refer to "services, not otherwise furnished under the State's Medicaid plan" such as "case management services, homemaker services, home health aide services, and personal care services." 42 C.F.R. §§ 440.180(a)-(b).

41.     In order for a State to receive federal Medicaid funding for home or community-based services, states must submit what is known as a §1915(c) waiver application to CMS.

42.     A State's §1915(c) waiver application must provide a detailed description of the Medicaid beneficiaries who will receive services under the program; the services that will be provided; and the qualifications of each category of providers.

43.     Section 6-E of the §1915(c) waiver application states: "In accordance with 42 CFR §431.151, a participant may select any willing and qualified provider to furnish waiver services included in the service plan unless the State has received approval to limit the number of providers under the provisions of §1915(b) or another provision of the Act."

## GRANT ACCOUNTABILITY AND TRANSPARENCY ACT

44.     In 2014, Illinois adopted the Grant Accountability and Transparency Act ("GATA"), 30 ILL. COMP. STAT. §§ 707/1 – 708/99, in an effort to "increase accountability and

transparency in the use of grant funds from whatever source and to reduce administrative burdens on both state agencies and grantees by adopting federal guidance and regulations applicable to such grant funds." 30 ILL. COMP. STAT. § 708/5(b).

45.    GATA applies to state grant-making agencies that make state and federal pass-through awards to non-federal entities. 30 ILL. COMP. STAT. § 708/45(a).

46.    Both IDHS and DDD are grant-making agencies, i.e., executive branch agencies that provide state or federal funds to non-federal entities. 30 ILL. COMP. STAT. § 708/15.

47.    GATA requires Defendants IDHS and DDD, as well as other state grant-making agencies to adopt the federal government's Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards ("Uniform Guidance"), codified at 2 C.F.R. § 200, unless state or federal law provides otherwise. 30 ILL. COMP. STAT. § 708/20(a).

48.    2 C.F.R. § 200.101(e)(1)(v) exempts awards made pursuant to Medicaid entitlement programs under Title XIX of the Social Security Act, 42 U.S.C. § 1396-1396w-5, from the guidance found in Subpart C--Pre-Federal Award Requirements and Contents of Federal Awards.

49.    The home and community-based services waiver program was authorized by OBRA, which amended the Social Security Act. 42 U.S.C. § 1396n. HCBS waiver services are part of the Medicaid entitlement program. Therefore, funding for the HCBS waiver services provided by ISC agencies should never have been subjected to the requirements under Subpart C of the Uniform Guidelines.

50.    The framework established under Subpart C of the Uniform Guidelines presumes that only a select number of applicants will be awarded funding. In other words, Subpart C applies to competitive bidding environments.

51.    With few exceptions, any willing and qualified provider is allowed to participate in the Medicaid program. The freedom of choice of provider provision would be rendered meaningless if states were allowed to limit the number of providers through a competitive bidding process.

## ILLINOIS ADMINISTRATIVE PROCEDURE ACT

52.    The Illinois Administrative Procedure Act ("IAPA") requires that all agency rules be promulgated, *i.e.*, made available for public inspection and filed with the Secretary of State. *See* 5 ILL. COMP. STAT. §§ 100/5-10.

53.    An agency "rule" is defined as an agency statement of general applicability "that implements, applies, interprets, or prescribes law or policy." *Walk v. Ill. Dep't of Children & Family Servs.*, 399 Ill. App. 3d 1174, 1184 (2010) (citing 5 ILL. COMP. STAT. §§ 100/1-70)).

54.    In adopting rules, administrative agencies must comply with the public-notice and comment requirements set forth in the IAPA. *Ogden Chrysler Plymouth, Inc. v. Bower,* 348 Ill. App. 3d 944, 957 (2004).

55.    Thus, a state agency must give the public 45 days notice of its intended action and accept comments, allow for public hearing if required, and give an additional 45-day notice period. 5 ILL. COMP. STAT. §§ 100/5-40 (b), (c).

56.    Unless a rule conforms with the public notice and comment requirements, "it is not valid or effective against any person or party and may not be invoked by an administrative agency for any purpose." *Champaign-Urbana Pub. Health Dist. v. Ill. Labor Rels. Bd.*, 354 Ill. App. 3d 482, 488 (2004) (citing *Kaufman Grain Co. v. Director of the Department of Agriculture,* 179 Ill. App. 3d 1040, 1047 (1988)).

57.    GATA and its implementing regulations specifically provide that all State grant-making agencies must adopt by rule the Uniform Guidance by July 1, 2017 in order to comply with GATA. 30 ILL. COMP. STAT. 708/85; ILL. ADMIN. CODE tit. 44, § 7000.200(b).

58.    IDHS/DDD failed to formally adopt the rules and procedures that it is using in the ISC NOFO and is acting in violation of the Administrative Procedures Act. 5 ILL. COMP. STAT. 100/5-5.

### FACTS RELEVANT TO WISC

59.    WISC is a 501(c)(3) non-profit, Independent Service Coordination ("ISC") agency located at 509 North Lafayette Street, Suite 203 in Macomb, Illinois.

60.    Mary Jane Friedrich is WISC's executive director.

61.    WISC has successfully served and supported persons with intellectual and developmental disabilities, and their families since its incorporation in 1994.

62.    For the past 25 years, WISC has been the sole ISC agency in West Central Illinois that serves McDonough, Fulton, Knox, Warren, Henry, Henderson, and Stark counties.

63.    WISC employs 11 full-time staff, including 10 credentialed and degreed Qualified Intellectual Disability Professionals ("QIDP").

64.    WISC serves over 784 individuals every year. WISC is the only ISC provider that many of these individuals have ever worked with. Bringing in a new provider who has no experience in this location will likely be highly disruptive for many of these individuals.

65.    Prior to the September 2018 NOFO, WISC's contract with the State of Illinois for ISC funding was renewed every year for over two decades.

66.    WISC fulfilled all contractual obligations throughout its 25-year history and has partnered exceptionally with the longstanding leaders and funders of I/DD services. WISC has,

without exception, scored in the top tier of every standard and outcome measured, targeted, and obligated under the contracts it was awarded.

67.     WISC relies on the State's funding and has never had any reason to believe that it was not fulfilling its contractual obligations with the State in an exemplary manner.

68.     WISC submitted a timely application to Defendants for funding under the ISC NOFO on November 8, 2018.

69.     On January 2, 2019 Bobby Gillmore, Bureau Chief of Reimbursements and Program Support for the Division of Developmental Disabilities, emailed Mary Jane Friedrich a letter notifying her that WISC's request for funding for fiscal year 2020 through the ISC NOFO grant was denied.

70.     The letter did not provide any grounds for the denial.  Specifically, the letter did not assert any grounds for the denial that related to WISC's competence to provide care under the Medicaid program.

71.     Instead of renewing WISC's funding, Defendants selected another ISC provider, Prairieland Inc., from Macon County, Illinois. Prairieland has no offices or staff in McDonough, Fulton, Knox, Warren, Henry, Henderson, or Stark counties and has no connection to the region.

72.     If the NOFO is permitted to go into effect, WISC will lose approximately $819,835.00 in annual funding, effective July 1, 2019 and will thereafter cease operations as an ISC provider.

73.     After July 1, 2019, ISC services to persons with developmental disabilities and their families will allegedly be provided by Prairieland Service Coordination, Inc. Prairieland Service Coordination, Inc. is an ISC provider with a primary place of business in Decatur, Illinois and no known connections to McDonough, Fulton, Knox, Warren, Henry, Henderson, and Stark Counties.

74.    WISC's mission is to "enhance the quality of life for all individuals in need of service coordination. These services will assist and empower individuals without regard to disability, dependent status, race, creed, color, sex, national origin, age, or financial status."

75.    Defendants' unlawful adoption of the ISC NOFO funding scheme has frustrated WISC's mission by arbitrarily denying WISC the funding it needs to continue its work.

76.    In the absence of preliminary injunctive relief, WISC's interests and the interests of the I/DD population in McDonough, Fulton, Knox, Warren, Henry, Henderson, and Stark Counties will be irreparably harmed in ways that cannot be cured by money damages.

77.    WISC has no option other than equitable relief. If the transition proceeds as DHS plans, WISC will be forced to lay off all its employees, liquidate its assets, and close the organization down. For WISC, who was organized for the sole purpose of working with people with I/DD, an award of monetary damages cannot rectify these harms, and any post-trial relief will come too late to avert the injuries certain to result from Defendants' actions absent immediate injunctive relief.

## FACTS RELEVANT TO CISA

78.    CISA is a 501(c)(3) non-profit, ISC agency located at 101 Madigan Drive Lincoln Illinois.

79.    Mary McGlauchlen is CISA's executive director.

80.    CISA has successfully served and supported persons with intellectual and developmental disabilities, and their families since its incorporation in 1994.

81.    For the past 25 years, CISA has been the sole ISC agency in Sangamon, Logan, Mason, Christian, Menard, Peoria, Tazewell, Woodford and Mclean counties.

82.   CISA   employs 40 full-time staff, including 31 credentialed and degreed QIDPs and two nurses.

83.   CISA serves over 2800 individuals every year. CISA is the only ISC provider that many of these individuals have ever worked with. Bringing in a new provider who has no experience in this location will likely be highly disruptive for many of these individuals.

84.   CISA fulfilled all contractual obligations throughout its 25-year history and has partnered exceptionally with the longstanding leaders and funders of I/DD services.

85.   CISA has, without exception, scored in the top tier of every standard and outcome measured, targeted, and obligated under those contracts.

86.   Prior to the September 2018 NOFO, all ISC funding was provided through a non-competitive, annual fiscal year renewal contract process.  CISA's contract with the State of Illinois for ISC funding had been renewed through this process every year for twenty-five years.

87.   CISA has come to rely upon the State's funding and has never had any reason to believe that it was not fulfilling its contractual obligations with the State in an exemplary manner.

88.   CISA submitted a timely application to Defendants for funding under the ISC NOFO on November 8, 2018.

89.   On January 2, 2019 DHS/DDD emailed Mary McGlauchlen a Notice of State Award indicating CISA had been selected to receive the ISC NOFO grant funding for region "I," which is made up of counties Hancock, Adams, Brown, Pike, Schuyler, Calhoun, Cass, Scott, Greene, Jersey, Macoupin, Menard, Montgomery, Morgan, Sangamon, Logan, and Christian, counties. However, CISA was denied the bid for area "H," which is made up of the counties of Tazewell, Peoria, Mason, and McLean for fiscal year 2020.

90.    Another ISC provider, Champaign County Regional Planning Commission ("CCRPC") was awarded the contract for region "H." CCRPC has no staff in this region and has no connection to the individuals CISA has served for decades.

91.    The letter did not provide any grounds for the denial.  Specifically, the letter did not assert any grounds for the denial that related to CISA's competence to provide care under the Medicaid program.

92.    CISA's mission is to "maximize independence for individuals with disabilities through choice, advocacy and service access." Defendants' unlawful adoption of the ISC NOFO funding scheme has frustrated CISA's mission by arbitrarily denying CISA the funding it needs to continue its work.

93.    In the absence of preliminary injunctive relief, CISA's interests and the interests of the I/DD population in Mclean, Mason, Tazewell, and Woodford counties will be irreparably harmed in ways that cannot be cured by money damages.

**FACTS RELEVANT TO DAYONE PACT**

94.    Plaintiff DayOne PACT is a 501(c)(3) non-profit, ISC agency located at 750 Warrenville Rd., Suite 300 Lisle IL 60532.

95.    Stephen J. Boisse is DayOne PACT's Chief Executive Officer.

96.    DayOne PACT was incorporated in 2016 as the result of the merger between PACT, Inc. (Incorporated in 1981) and DayOne Network (Incorporated in 1989).

97.    DayOne PACT has successfully served and supported persons with intellectual and developmental disabilities, their families for 32 years.

98.    DayOne PACT has been the sole ISC agency in DuPage, Kane, and Kendall counties for the past 32 years.

99.     DayOne PACT employs 131 full-time and part-time staff, including 47 credentialed and degreed QIDPs.

100.     DayOne PACT serves over 4,500 individuals every year. DayOne PACT is the only ISC provider that many of these individuals have ever worked with. Bringing in a new provider who has no experience in this location will likely be highly disruptive for many of these individuals.

101.     DayOne PACT has fulfilled all contractual obligations throughout its 32-year history and has partnered exceptionally with the longstanding leaders and funders of I/DD services. DayOne PACT has, without exception, scored in the top tier of every standard and outcome measured, targeted, and obligated under those contracts.

102.     Prior to the September 2018 ISC NOFO, all ISC funding was provided through a non-competitive, annual fiscal year renewal contract process. DayOne PACT's contract with the State of Illinois for ISC funding had been renewed through this process every year for over two decades.

103.     DayOne PACT has come to rely upon the State's funding and has never had any reason to believe that it was not fulfilling its contractual obligations with the State in an exemplary manner.

104.     DayOne PACT submitted a timely application to Defendants for funding under the ISC NOFO on November 8, 2018.

105.     On January 2, 2019 DHS/DDD emailed Stephen J. Boisse a letter notifying him that DayOne PACT had not been selected to receive the ISC NOFO grant funding for fiscal year 2020.

106.    Another ISC provider, Service Inc., from Will County, Illinois was selected instead. Service Inc. has no offices or staff in DuPage, Kane, or Kendall counties and has no connection to this region.

107.    The letter did not provide any grounds for the denial.  Specifically, the letter did not assert any grounds for the denial that related to DayOne PACT's competence to provide care under the Medicaid program.

108.    If the NOFO is permitted to go into effect, DayOne PACT will lose approximately $3,557,785 in annual funding, effective July 1, 2019 and will thereafter cease operations as an ISC provider.

109.    After July 1, 2019, ISC services to persons with developmental disabilities and their families will allegedly be provided by Service Inc.  Service Inc. is an ISC provider with a primary place of business in Joliet, Illinois and no known connections to DuPage, Kane and Kendall Counties.

110.    DayOne PACT's mission is helping people with disabilities live supported, productive and meaningful lives. Because we see every individual we work with as a whole person with unique promise, abilities, experiences and aspirations, we believe in the individual's right to make his or her own decisions in keeping with his or her abilities.

111.    Defendants' unlawful adoption of the ISC NOFO funding scheme has frustrated DayOne PACT 's mission by arbitrarily denying DayOne PACT the funding it needs to continue its work. In the absence of preliminary injunctive relief, DayOne PACT's interests and the interests of the I/DD population in DuPage, Kane and Kendall Counties will be irreparably harmed in ways that cannot be cured by money damages.

112.    DayOne PACT has no option other than equitable relief. If the transition proceeds as DHS plans, DayOne PACT will be forced to lay off all of its employees, liquidate its assets, and close the organization down. For DayOne PACT, who was organized for the sole purpose of working with people with disabilities, an award of monetary damages cannot rectify these harms, and any post-trial relief will come too late to avert the injuries certain to result from Defendants' actions absent immediate injunctive relief.

## **FACTS RELEVANT TO F.L.**

113.    F.L. is an Illinois resident and Medicaid patient and obtains his services through WISC and desires to continue to do so. He sues through his guardian, Jeanette Gathman.

114.    F.L. appears pseudonymously because he is a person with disabilities. F.L. has autism and is nonverbal.

115.    F.L. is twenty-three years old.

116.    F.L. has received services through WISC for, at a minimum, the last five years.

117.    WISC arranged one-on-one services for F.L., so he receives assistance and care each day.

118.    WISC worked quickly to obtain an emergency placement in a Community Integrated Living Arrangement ("CILA") for F.L. closer to his hometown, in Canton, IL.

119.    WISC also keeps Ms. Gathman informed of any incidents that occur in the CILA, such as when F.L. dislocated his shoulder after a seizure at the CILA. Because Ms. Gathman and F.L. do not live in the same town, Ms. Gathman relies on WISC to keep her informed of any incidents that may occur and to act as a means of oversight for the CILA and day programs in which F.L. is involved.

120.    WISC has advocated for F.L. in a variety of other ways over the years: WISC advocated for F.L. to obtain swimming lessons, fought for his educational placements, assisted with obtaining medical equipment, including F.L.'s communication devices, and routinely checked on him in his home.

121.    WISC has a longstanding understanding of F.L.'s medical and emotional needs.

122.    To date, F.L.'s guardian has not received any information regarding any changes to F.L.'s service provider.

<u>**COUNT ONE**</u>

**(Violation of the Medicaid Act)**

123.    Plaintiffs repeat, allege, and incorporate the foregoing paragraphs as if fully set forth herein.

124.    Defendants' actions violate Section 1396a(a)(23) of Title 42 of the United States Code by denying Plaintiffs' consumers, including F.L., the right to choose any willing, qualified provider of ISC services under the HCBS waiver program.

125.    More specifically, Defendants' conduct not only violates the freedom of choice provision of the Medicaid Act, but their blatant and ongoing disregard of the law demonstrates a willful and reckless indifference to the rights of others.

<u>**COUNT TWO**</u>

**(Violation of the Illinois Administrative Procedures Act)**

126.    Plaintiffs repeat, allege, and incorporate the foregoing paragraphs as if fully set forth herein.

127.    Defendants failed to properly promulgate GATA rules related to the NOFO ISC in violation of the IAPA. 5 ILL. COMP. STAT. 100/5-5.

128.   Plaintiffs have a substantial interest in the funding under the NOFO ISC. The rules and procedures under the NOFO violate not only state and federal law generally, but also Plaintiffs' rights and privileges under the IAPA specifically.

129.   Defendants violated the IAPA when they adopted policies and procedures that had not been formally promulgated in the NOFO ISC and subsequently applied those policies and procedures when reviewing and denying Plaintiffs' application for NOFO ISC funding.

130.   Defendants failed to provide Plaintiffs with a fair and meaningful appeal process and abused their discretion.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that this Court:

131.   Issue a declaratory judgment that Defendants' actions violate the Medicaid Act;

132.   Issue a declaratory judgment that Defendants' actions violate the Illinois Administrative Procedures Act;

133.   Issue temporary, preliminary and permanent injunctive relief, without bond, enjoining Defendants, their agents, employees, appointees, delegates, and successors to maintain funding to Plaintiffs and stay Defendants from entering any contracts implementing the ISC NOFO for fiscal year 2020 until such time as this Court has had an opportunity to render a decision in this case;

134.   Grant Plaintiffs' costs, attorneys' fees, and expenses costs, expenses pursuant to 42 U.S.C. § 1988; and

135.   Grant such further relief as this Court deems just and proper.

Respectfully Submitted,

*/s/Sarah Jane Hunt*
Sarah Jane Hunt
Thomas E. Kennedy, III
MaryAnne Quill
Kennedy Hunt, P.C.
906 Olive St., Ste. 200
St. Louis, MO 63101
(314) 872-9041 phone
sarahjane@kennedyhunt.law.com
tkennedy@kennedyhuntlaw.com
mquill@kennedyhuntlaw.com