IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

WESTERN ILLINOIS SERVICE            )
COORDINATION; CENTRAL ILLINOIS      )
SERVICE ACCESS; DAYONE PACT;        )
F.L., by his guardian and next friend,  )
JEANETTE GATHMAN; C.H., by her      )
guardian and next friend, YVONNE     )
HALL; and A.H., by her guardian and next  )
friend, CHRISTINE PROPHETER,         )
                                     )
     Plaintiffs,                     )
                                     )
 v.                                 )          Case No. 19-3127
                                     )
ILLINOIS DEPARTMENT OF HUMAN        )
SERVICES; GRACE B. HOU, Secretary   )
of Illinois Department of Human Services;  )
DIVISION OF DEVELOPMENTAL           )
DISABILITIES; KATHLEEN R. WARD,     )
Acting Director of IDHS-DDD; GARY    )
KRAMER, Chief Accountability Officer of  )
Reimbursements and Program Support for  )
IDHS-DDD; and MELISSA WRIGHT,       )
Former Director of IDHS-DDD,          )
                                     )
     Defendants.                     )

## OPINION

RICHARD MILLS, United States District Judge:

     This is a civil rights action pursuant to 42 U.S.C. § 1983, wherein Plaintiffs

seek to vindicate rights secured by the federal Medicaid statutes and implementing

regulations.  The amended complaint also includes state law claims arising under the

Grant Accountability and Transparency Act ("GATA"), 30 ILCS §§ 707/1- 708/99, and the Illinois Administrative Procedures Act ("IAPA"), 5 ILCS 100/5-5 and its implementing regulations.

Pending is the Plaintiffs' motion for preliminary injunction [Doc. No. 16] pursuant to Federal Rule of Civil Procedure 65.

The Defendants have filed a response [Doc. No. 30] in opposition to the motion for preliminary injunction.

Also pending is a motion by Prairieland Service Corporation, Inc., to intervene as of right in this action pursuant to Federal Rule of Civil Procedure 24(a).

Service Inc. of Illinois f/k/a Service of Will, Grundy and Kankakee Counties also moves to intervene as of right pursuant to Rule 24(a).

On June 21, 2019, the Court held a hearing on the motion for preliminary injunction. The Parties and Intervenor movants were present.

## I.    BACKGROUND

A. Plaintiff's allegations

As alleged in their amended complaint, Plaintiffs Western Illinois Service Coordination ("WISC"), Central Illinois Service Access ("CISA") and DayOne PACT are independent service coordination agencies that have contracted with the State of Illinois for the past several decades to provide case management and coordination services to persons with developmental disabilities. Their consumers

include individual Plaintiffs F.L., C.H., and A.H., who are persons with disabilities. As of July 1, 2018, there were 17 independent service coordination agencies operating in 17 regions throughout the State of Illinois.

The Plaintiffs allege that on September 1, 2016, Defendant Illinois Department of Human Services ("DHS") met with representatives from the 17 independent service coordination agencies and informed them of the Department's intent to seek competitive proposals for future independent service coordination contracts. Prior to September 2018, all independent service coordination funding was provided through a noncompetitive, annual fiscal year renewal process referred to as a "Community Service Agreement."

The Plaintiffs allege that during the next two years, DHS refused to provide any information or details about the competitive bid process to independent service coordination directors during their quarterly meetings. While the competitive funding scheme represented a major departure from prior DHS policies and procedures, DHS never proposed a formal rule or went through the rulemaking process, as required by the Illinois Administrative Procedures Act ("APA"). Instead, independent service coordination directors were told to submit questions for review and comment through the DHS website. DHS invited the independent service coordinators to participate in a request for information in July 2018. Independent service coordination agencies were invited to share statistical and geographic

information about their service areas with the state via the request for information. In the request for information, DHS indicated it intended to issue a notice of funding opportunity grant in late summer or early fall 2018 and use it to redefine the geographic boundaries to which independent service coordination agencies are currently assigned and reduce the number of distinct independent service coordination agencies currently under contract. On September 20, 2018, DHS and Illinois Division of Developmental Disabilities Department ("DDD") issued the notice of funding opportunity.

The Plaintiffs allege that in November 2018, 33 statewide agencies and associations signed a letter that was sent to Defendant Melissa Wright, then Secretary of DHS, voicing their serious concerns with the process. Representatives from 13 of 17 independent service coordinators signed the letter. The letter identified technical issues with the process, raised concerns about the lack of clear information in the process and described the widespread, systemic disruption that would result from the process. Wright responded by stating, "I always think one should be very careful about what words one chooses when writing documents of this nature."

WISC, CISA and DayOne PACT submitted timely applications for the notice of funding opportunity grant funding on November 8, 2018. On January 2, 2019, Defendants DHS/DDD notified Plaintiffs WISC and DayOne PACT that their

applications for funding under the independent service coordination notice of funding opportunity for fiscal year 2020 had been denied. The same day, CISA was notified that it received grant funding for region "I," but was denied the bid for area "H." CISA had formerly served consumers in both regions. The State did not provide any explanation for these denials.

The Plaintiffs allege all independent service coordinators that were denied funding under the notice of funding opportunity will be immediately disqualified from providing home and community-based case management services, including the Plaintiffs in this matter, on July 1, 2019. WISC will lose all funding and staff and cease to exist on July 1, 2019 because of the notice of funding opportunity process. CISA will lose one-third of its funding and staff on July 1, 2019 and will no longer be allowed to provide case management services to consumers residing in region H, after having been the sole provider of independent service coordination case management services for many consumers in that region for the past 25 years, because of the notice of funding opportunity process. On July 1, 2019, services to persons with developmental disabilities in service areas that were not awarded funding will be provided by new independent service coordination agencies. When CISA attempted to retain customers by sending them a choice of provider form letter, Kathy Ward, Acting DDD Director, informed CISA that the ability to change

providers was "never intended to be as unfettered choice to all families" and that CISA should "refrain from offering [] families this kind of choice at this time."

The Plaintiffs allege Individual Plaintiffs A.H. and C.H. received a letter from DHS around the end of March 2019 or beginning of April 2019. The letter stated there would be a change in their independent service coordination provider but did not provide further details. The letter also indicated DHS would send more correspondence with additional information in "mid-March," though the Individual Plaintiffs did not receive further information from DHS regarding the change. Plaintiff F.L. never received any correspondence from DHS. A.H. and C.H. were not told they had a choice or the ability to appeal this decision. The replacement independent service coordination agencies have not contacted the Individual Plaintiffs and have not provided any information about transitioning to the new independent service coordinators. On July 1, 2019, thousands of people with developmental disabilities across the State of Illinois will be assigned a new provider of independent service coordination and individualized service and support advocacy case management services without their input and without any opportunity to appeal the decision.

The Plaintiffs allege each Individual Plaintiff has a longstanding and secure relationship with the case manager assigned by their independent service coordination agency. The case managers have gone above and beyond for the

families and guardians of the Individual Plaintiffs and have become indispensable to the Individual Plaintiffs. The Individual Plaintiffs trust and rely on their case managers because of his longstanding relationship and because case managers are intimately familiar with the Individual Plaintiffs and understand their goals and needs. New case managers will not readily have the level of understanding and expertise of the Individual Plaintiffs' current case managers. The Plaintiffs contend gaps in continuity of care caused by the notice of funding opportunity process and changing of independent service coordinators will damage progress made by Individual Plaintiffs.

The Defendants contend that the Independent Service Coordination Plaintiffs are simply disappointed bidders who were not selected to receive grant funding for the upcoming fiscal year. The Individual Plaintiffs are Medicaid recipients who have been receiving services from the Independent Service Coordination Plaintiffs and who will continue to receive services from the succeeding independent service coordination entities.

B. Motions to intervene

(1)

Prairieland Service Coordination, Inc. ("PSCI") seeks to intervene, claiming it is an indispensable party whose property rights may be adversely affected pending the Court's decision on Plaintiffs' motion for injunctive relief and Plaintiffs'

amended complaint. PSCI seeks to assert a claim against WISC for tortious interference with contract.

In its complaint to intervene, PSCI alleges that on or about September 1, 2016, DHS-DDD held a meeting that PSCI and other independent service coordination executives attended in which plans for a competitive bid notice of funding opportunity would be released, but which release was ultimately delayed.

On or about July 16, 2018, PSCI completed a request for information for DHS-DDD and, upon submitting the document, began to develop potential program plans and budgets for various regions across Illinois. On or about September 10, 2018, DHS-DDD published the notice of funding opportunity.

PSCI worked on and submitted notice of funding opportunity bids for several regions on November 8, 2018, including Region G, which includes McDonough, Fulton, Knox, Warren, Henry, Henderson and Stark Counties.

On or about January 2, 2019, DHS-DDD published a Notice of State Award initially announcing PSCI had won the notice of funding opportunity bid for Regions G, J and K.

DHS-DDD simultaneously sent PSCI a form letter informing them that their notice of funding opportunity bids for Regions H, I and L were not selected. The letter did not provide any grounds for the denial. PSCI did not appeal any of the determinations made by DHS-DDD.

PSCI has since been taking steps for a smooth transition for families and individuals that will be resuming their services through PSCI beginning July 1, 2019 in the Region G counties.

PSCI claims it has an interest in this litigation as its property right in the Region G funding is at stake. There is no party present in this litigation that can adequately represent its interest and any judgment entered disposing of this case would seriously impair or impede PSCI's ability to protect its property interest. PSCI learned of the Plaintiffs' claim on or about June 10, 2019.

(2)

Service Inc. of Illinois f/k/a Service of Will, Grundy and Kankakee Counties ("Service") also seeks to intervene under Rule 24(a), as an indispensable party whose property rights may be adversely affected if the Court grants the Plaintiffs' requested relief. Service seeks to assert a count for tortious interference with contract as to DayOne PACT.

In its proposed complaint to intervene, Service alleges that on September 1, 2016, it attended the meeting along with other independent service coordination executives in which plans for a competitive bid notice of funding opportunity would be released, but which release was ultimately delayed. On or about September 10, 2018, DHS-DDD published the notice of funding opportunity.

Service worked on and submitted notice of funding opportunity bids for several regions by November 12, 2018, including Region F, which includes Grundy, Kankakee and Will Counties.

On or about January 2, 2019, DHS-DDD published a Notice of State Award initially announcing Service had won the notice of funding opportunity for Regions A and F. Service states it has since been taking steps for a smooth transition for families and individuals that will be resuming their services through Service beginning July 1, 2019 in the Region F County.

Service claims it has an interest in this litigation as its property right in the Region F funding is at stake. No other party in this litigation can adequately represent its interest and any judgment entered disposing of the case would seriously impair or impede Service's ability to protect its property interest. Service learned of the Plaintiffs' claim on or about June 10, 2019.

## II.  DISCUSSION

The Plaintiffs say this case, at its core, is about ensuring that the voices of people with intellectual disabilities or developmental disabilities are heard and that individuals are given options to choose between qualified service providers who make it possible for them to live at home or in the community, if they so choose. It is also about standing up against a state bureaucracy that ignores the voices of the

people it is meant to serve.  The Plaintiffs claim the factors weigh in their favor for granting injunctive relief.

A. <u>Relief requested</u>

(1)

In Count One of the amended complaint, the Plaintiffs allege Defendants' actions violate 42 U.S.C. § 1396a(a)(23) by denying their consumers, including F.L., C.H. and A.H., the right to choose any willing, qualified provider of independent service coordination services under the home or community based services waiver program.  They further claim this demonstrates a willful and reckless indifference to the rights of others.

Section 1396a(a)(23) provides as follows:

A state plan for medical assistance must . . . (23) provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services, and (B) an enrollment of an individual eligible for medical assistance in a primary care case-management system (described in section 1396n(b)(1) of this title), a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services under section 1396d(a)(4)(C) of this title, [with unrelated exceptions].

42 U.S.C. §1396a(a)(23).    The Plaintiffs claim that this free-choice-of-provider provision ensures that Medicaid consumers may freely choose among qualified and willing providers of covered health care services.  They note that a State may limit

consumers' choice of provider under limited circumstances which are not applicable here. Otherwise a State must seek and obtain permission prior to limiting consumer choice. *See* 42 C.F.R § 431.51.

In Count Two, the Plaintiffs allege Defendants failed to properly promulgate GATA rules related to the notice of funding opportunity for independent service coordination services in violation of the IAPA. This also violates Plaintiffs' rights and privileges under the IAPA specifically. The Defendants violated the IAPA when they adopted policies and procedures that had not been formally promulgated in the notice of funding opportunity for independent service coordinators and subsequently applied those policies and procedures when reviewing and denying the Plaintiffs' application. The Plaintiffs further assert the Defendants failed to provide Plaintiffs with a fair and meaningful appeal process and abused their discretion.

The Plaintiffs seek the issuance of a declaratory judgment that Defendants' actions violate the Medicaid Act and a declaratory judgment that Defendants' actions violate the IAPA. The Plaintiffs also request the issuance of preliminary and permanent injunctive relief enjoining the Defendants, their agents, employees, appointees, delegates and successors to maintain funding to Plaintiffs and stay Defendants from entering into or acting upon any contracts implementing the independent service coordination notice of funding opportunity for fiscal year 2020 until such time as the Court has had an opportunity to render a decision in this case.

The Defendants claim that the Individual Plaintiffs' allegations of harm are purely speculative and that the Independent Service Coordination Plaintiffs have no property interest that triggers constitutional due process protections. The Defendants further contend that neither the Individual Plaintiffs nor the Independent Service Coordination Plaintiffs can prevail on a Freedom of Choice claim arising under 42 U.S.C. § 1936a(a)(23), as independent service coordination entities are not "qualified providers" under the Medicaid Home and Community Based Waiver for developmentally disabled adults. The Defendants contend, therefore, that Plaintiffs' reliance on the freedom-of-choice provision is misplaced.

(2)

A court must permit a party to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

In its proposed complaint to intervene, PSCI asserts a tortious interference with contract as to WISC. PSCI alleges that, since WISC learned that PSCI was given the award for Area G, WISC has attempted to induce a breach of the contract rights between DHS and PSCI by filing this amended complaint, seeking specifically to "issue preliminary and permanent injunctive relief . . . enjoining Defendants . . .

to maintain funding to Plaintiff[] [WISC] and stay Defendants from entering into or acting upon any contracts implementing the [independent service coordination notice of funding opportunity] for fiscal year 2020[.]" *Plaintiffs Amended Complaint*, ¶ 157.

PSCI alleges WISC has attempted to unjustifiably induce a breach of the contractual rights between DHS and PSCI, even though both parties entered into a contract on or about May 14, 2019. Therefore, PSCI claims WISC is not entitled to any of the contract rights that PSCI has had since May 14, 2019.

PSCI claims that, if the Court enjoins the State from performing the Grant Agreement, a breach of the contract between the parties will have occurred due to Plaintiffs' actions.

PSCI asks the Court to deny the Plaintiffs' request for preliminary and permanent injunctive relief and all other relief sought in Plaintiffs' amended complaint. Alternatively, if the relief sought by Plaintiffs is granted, PSCI seeks the entry of judgment in its favor for all compensatory and consequential damages incurred as a result of Plaintiffs' interference with PSCI's contractual rights.

(3)

In its proposed complaint to intervene, Service asserts a tortious interference with contract claim as to DayOne PACT. Service alleges that after the announcement of the State Awards, DayOne PACT came to know that Service was

given the award for Area F. DayOne PACT is attempting to intentionally induce a breach of the contract rights between DHS and Service by filing the instant matter and seeking to maintain funding to DayOne PACT, while preventing Defendants from entering into or acting upon any contracts implementing the independent service coordination notice of funding opportunity for fiscal year 2020.

Service alleges DayOne PACT has attempted to unjustifiably induce a breach of the contractual rights between DHS and Service even though both parties entered into a contract on or about May 14, 2019, and DayOne PACT is not entitled to any of the contract rights that Service has had since May 14, 2019.

Service claims that, if the Court enjoins the State from performing the grant agreement, a breach of the contract between the parties will have occurred due to Plaintiffs' actions.

Service asks the Court to deny Plaintiffs' request for injunctive relief and all other relief sought in Plaintiffs' amended complaint. Alternatively, if the Plaintiffs are granted their requested relief, Service seeks the entry of judgment in its favor for all compensatory and consequential damages incurred as a result of Plaintiffs' interference with Service's contractual rights.

B. Legal standard

At the threshold phase, a party seeking a preliminary injunction must show

that "(1) absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims, (2) traditional legal remedies would be inadequate, and (3) its claim has some likelihood of succeeding on the merits." *Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018) (internal quotation marks and citation omitted).  If the moving party makes that showing, the Court proceeds to the balancing phase, weighing "the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief."  *Id*. at 966.  Courts employ a sliding scale approach: "the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."  *Id*.  If appropriate,  a court should also consider any effect the granting or denying of an injunction would have on the public interest.  *See id*.

While a plaintiff need not show a likelihood of absolute success on the merits, it must demonstrate a "better than negligible" chance of success.  *See id*.  Despite this low threshold, a movant with a relatively weak case will not always obtain an injunction.  *See id*.

C.    Irreparability of harm and other remedies

The Court recognizes that the Independent Service Coordination Plaintiffs

likely would suffer irreparable harm. Each of those Plaintiffs has a mission to serve individuals with intellectual and developmental disabilities and their families and to support such individuals in integrated, community-based settings. Without preliminary injunctive relief, the Independent Service Coordination Plaintiffs will not be able to provide independent service coordination and individual service and support advocacy case management services to their consumers.

Due to the loss of funding provided by the Medicaid contracts, the Independent Service Coordination Plaintiffs will be forced to lay off employees, shut down state-funded operations, or cease to exist altogether. If that occurs, it would be very difficult to resume operations as they are currently. Given the decades of building relationships with consumers and waiver service providers and constructing positive relationships in various communities, it is unlikely there is a damages remedy at law to recoup the loss of such relationships or the damage to the Independent Service Coordination Plaintiffs' hard-won trust and respect in the community.

More significantly, the Individual Plaintiffs would likely suffer harm in the absence of a preliminary injunction. The Defendants claim this concern is speculative but there is little question that there is a basis to believe that some harm would result—at least in the short term. The testimony at the hearing established that continuity of care is an important consideration for individuals with developmental

and intellectual disabilities, some of whom have autism and are nonverbal and do not respond well to change. Plaintiff F.L. has had the same case manager for four years. F.L.'s guardian and next friend testified that she does a wonderful job and he is very comfortable with her. The employees of a new entity would not have the historical knowledge of the individuals, like F.L.'s case manager, who have been providing services for years. It is likely there would be some harm to the Individual Plaintiffs in the near term. That is a reality even though the Court has no basis to doubt the competence of the employees at the new agencies. Hopefully, after some period of adjustment, the initial harm would be repaired.

    D.    <u>Likelihood of success on the merits</u>

(1)

The Plaintiffs contend they are likely to succeed on the merits of their claims. The independent service coordination notice of funding opportunity violates the Plaintiffs' right to choose a qualified and willing case management provider of independent service coordination and individualized service and support advocacy services under the free-choice-of-provider provision of the Medicaid Act, by awarding a contract for such services through a competitive bidding process to only one independent service coordination provider per region.

"In 1981, Congress enacted Section 1915(c) of the Social Security Act (SSA), 42 U.S.C. § 1396n, which established the Home and Community-Based Care Waiver

Program." *Steimel v. Wermert*, 823 F.3d 902, 907 (7th Cir. 2016). A home and community-based waiver program allows "states to diverge from the traditional Medicaid structure by providing community-based services to people who would under the traditional Medicaid structure require institutionalization." *Id*.

The Plaintiffs note that Illinois operates several waivers under the Section 1915(c) Health and Community-Based Medicaid Waiver Program, including the Section 1915(c) Waiver for Adults with Developmental Disabilities ("DD Waiver") at issue in this case. *See* https://www.dhs.state.il.us/OneNetLibrary/27896/documents/Reta/AdultDDRenewalApproved7117.pdf. The DD Waiver provides health and community-based services to eligible adults with intellectual disabilities or developmental disabilities who would otherwise require institutional care. Section 6-E of the DD Waiver states, "In accordance with 42 CFR § 431.151, a participant may select any willing and qualified provider to furnish waiver services included in the service plan unless the State has received approval to limit the number of providers under the provisions of § 1915(b) or another provision of the Act." *See* DD Waiver at 7. Section 431.151 "sets forth the appeals procedures that a State must make available." 42 C.F.R. § 431.151(a). The Plaintiffs say that the State did not request approval to limit the number of providers under any provision of the Act.

The Plaintiffs further claim that the independent service coordination notice of funding opportunity for fiscal year 2020 provides funding for independent service agencies to perform case management and coordination services under multiple programmatic categories and different state and federal funding streams. Although the framework related to when and how a State can impose restrictions on who may provide case management services is something of a regulatory nightmare, the Medicaid Act allows consumers enrolled in the DD Waiver program a right to choose any provider of independent service coordination or individualized service and support advocacy services that is willing to provide those services.

The Plaintiffs claim the Defendants have acknowledged the right to choose a provider at different times but have recently denied consumers this right of choice. In support of this assertion, the Plaintiffs attach an Independent Service Coordination/Individual Service and Support Advocacy (ISC/ISSA) Transfer Request Form and an Independent Service Coordination/Individualized Service and Support Advocacy Transfer Request Information Bulletin dated September 2016. The information bulletin lists its purpose as "introduc[ing] a formalized process for individuals and guardians to select an Independent Service Coordination (ISC) agency for their Individualized Service and Support Advocacy (ISSA) Services."

The Plaintiffs allege the Individual Plaintiffs and the Independent Service Coordination Plaintiffs, as third-party representatives, have a private right of action

under § 1396a(a)(23). In considering the constitutionality of an Indiana law that barred state agencies from contracting with or making grants to an entity that performed abortions, the Seventh Circuit found that the free-choice-of-provider statute confers a private right of action because under § 1396a(a)(23), "state Medicaid plans 'must' allow beneficiaries to obtain medical care from 'any institution, agency, . . . or person, qualified to perform the service." *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 968 (7th Cir. 2016). "In this context, 'qualified' means fit to provide the necessary medical services—that is, capable of performing the needed medical services in a professionally competent, safe, legal, and ethical manner." *Id*.

The Plaintiffs say that the Independent Service Coordination Plaintiffs are qualified and have performed these services for decades, which shows that the State has deemed them to be qualified. Moreover, the Individual Plaintiffs wish to obtain the independent service coordination services through their providers of choice, the Individual Service Coordination Plaintiffs. The Plaintiffs contend that because the independent service coordination notice of funding opportunity would improperly interfere with the choice of independent service coordination providers, it violates the freedom of choice provision of the Medicaid Act and must be enjoined.

The Defendants contend that Plaintiffs cannot prevail on a freedom-of-choice claim arising under § 1936a(a)(23) because independent service coordination

entities are not "qualified providers" under the Medicaid Home and Community-Based Waiver for developmentally disabled adults. The Seventh Circuit found "that the free-choice-of-provider statute unambiguously gives Medicaid-eligible patients an individual right." *Planned Parenthood*, 699 F.3d at 974. The court held, "Because Indiana's defunding law excludes a class of providers from Medicaid for reasons unrelated to provider qualifications, we agree with the district court that Planned Parenthood is likely to succeed on its claim that Indiana's defunding law violates § 1396a(a)(23)." *Id*.

The Defendants say this case differs from *Planned Parenthood* for a number of reasons. Significantly, the Independent Service Coordination Plaintiffs (and other independent service coordination entities) are not *providers* under the DD Waiver program. The Defendants attach the Application for a Home and Community-Based Waiver in support of the assertions. The Waiver describes their status and functions in part as follows, "Independent Service Coordination (ISC) entities under contract with the Operating Agency, complete eligibility determinations, conduct monitoring functions and provide independent service coordination." Waiver, at 17. The Defendants note that independent service coordination agencies are described throughout the waiver as "entities under contract with the Operating Agency." "Per contractual agreement with the OA, the ISC's are prohibited from providing direct service to waiver participants." *Id*. at 121. "The ISC agency may not provide any

direct services in order to avoid a conflict of interest." *Id*. at 122. Additionally, "the ISC explains to the participant the types of services available under the Waiver, as well as all willing and qualified providers of services." *Id*. "The ISC is responsible for informing participants that a listing of all qualified providers by type of provider is available on the OA's website." *Id*.

The Plaintiffs claim that Defendants' actions violate § 1396a(a)(23) by denying the Plaintiffs' consumers, including F.L., C.H. and A.H., the right to choose any willing qualified provider of independent service coordination services under the home or community-based services waiver program.

The Defendants contend that the freedom-of-choice provision, § 1396a(a)(23), does not stand for an unlimited access to an individual's independent service coordinator of choosing as independent service coordinators are precluded from providing direct services. The Defendants claim that independent service coordinators are administrative entities under contract with the State whose function is to connect individual participants with willing and qualified providers of services. The independent service coordinators are not "qualified" as that term is used in the free-choice-of-provider provision of § 1396a(a)(23) in that they cannot "provide the necessary medical services . . . in a professionally competent, safe, legal, and ethical manner." *Planned Parenthood*, 699 F.3d at 968.

Although the Court recognizes the very important work done by Independent Service Coordination Plaintiffs and other entities, they are not "providers" under the DD Waiver and thus are not within the purview of § 1396a(a)(23). Independent service coordination agencies are under contract with the State but are not permitted to provide direct services to waiver participants. Independent service coordinators are tasked with relaying information about qualified providers. Because they do not provide direct services to participants and are not themselves providers, independent service coordination agencies are not "qualified" under the freedom of choice provision.

Because the Independent Service Coordinators do not provide medical assistance, the Plaintiffs are not likely to succeed on a claim under § 1396a(a)(23). Based on the foregoing, the Court concludes it is unlikely that Plaintiffs can prevail on the claim asserting a violation of the Medicaid Act.

(2)

The Plaintiffs further assert the Defendants' failure to formally promulgate the rules contained within the independent service coordination notice of funding opportunity, as required by GATA, violates the Illinois Administrative Procedures Act and renders the independent service coordination notice of funding opportunity invalid and void.

In 2014, Illinois adopted GATA, 30 ILCS §§ 707/1 – 708/99, in an effort to "increase the accountability and transparency in the use of grant funds from whatever source and to reduce administrative burdens on both State agencies and grantees by adopting federal guidance and regulations applicable to such grant funds; specifically, the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards ("Uniform Guidance")." 30 ILCS 708/5(b).

The Plaintiffs claim this harm is irreparable and there is no adequate remedy at law. Another provision reiterates, "State grant-making agencies shall implement the policies and procedures applicable to State and federal pass-through awards by adopting rules for non-federal entities by December 31, 2017." 30 ILCS 708/90.

The Plaintiffs allege that, four years after the original rulemaking deadline, DHS and DDD have made no effort to adopt the required rules in accordance with the rulemaking procedures set forth in the IAPA, pursuant to 5 ILCS 100/5-5.

The Plaintiffs further contend that, DHS/DDD is attempting to implement rule changes that violate the Medicaid Act and will drastically and irreparably affect the rights and interests of individuals in the State without giving those individuals an opportunity for input. DHS/DDD has proceeded to implement policy, in the form of the independent service coordination notice of funding opportunity, without formally adopting the required rules.

The Plaintiffs claim that, if the Defendants had complied with the law and gone through the formal rulemaking process required by the IAPA, which provide for comment period and legislative feedback, this situation likely would have been averted. Legislators would have had a chance to express their views. Consumers and providers of independent service coordination and individual service and support advocacy case management services, like the Plaintiffs here, could have been heard and have an opportunity to hold public officials accountable.

The Plaintiffs state that the substance and the application of the independent service coordination notice of funding opportunity were deeply flawed. They contend the notice of funding opportunity's "merit review process" provision is vague and violates due process, in addition to state and federal regulatory laws regarding grant-making procedures. Moreover, the process was flawed and did not provide adequate safeguards against arbitrary and clearly erroneous results. The Defendants also failed to provide the independent service coordination Plaintiffs with a fair and meaningful opportunity to appeal the adverse decisions made against them.

The Defendants contend the Independent Service Coordination Plaintiffs' allegations that they did not receive due process based on a failure by DHS to promulgate administrative rules is unclear given that Plaintiffs have not established that the Home and Community-Based Care Waiver Program is subject to GATA.

"In the absence of an underlying property interest, the Due Process Clause does nor require states to obey their own procedural rules in awarding municipal contracts." *Kim Const. Co., Inc. v. Board of Trustees of Village of Mundelein*, 14 F.3d 1243, 1246 (7th Cir. 1994).

The Plaintiffs have not established that the Court can remedy Defendants' alleged failure to adhere to GATA and resulting IAPA violation by declaring the independent service coordination notice of funding opportunity null and void. To the extent the Plaintiffs allege this constitutes a due process violation, they must establish there is a "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004). A plaintiff must have "a legitimate claim of entitlement" to a property interest protected by the Fourth Amendment, not merely a "unilateral expectation of the claimed interest." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). The interest must be "substantive rather than procedural in nature." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018).

The Individual Service Coordination Plaintiffs allege that, after a competitive bid process, they did not receive contracts to provide services effective June 1, 2019. "[A] disappointed bidder for a contract in Illinois lacks a property interest." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.3d 1073, 1080 (7th Cir. 1987); *see also Coyne-Delaney Co., Inc. v. Capital Developmental Bd. State of Ill.*, 616 F.2d 341,

342-43 (7th Cir. 1980) ("A bidder on a government contract has no legally enforceable rights against the award of the contract to a competitor other than those the government has seen fit to confer."). While the State may not be following its own regulations, the Court is unaware of any legally enforceable rights conferred by the State. Moreover, the Independent Service Coordination Plaintiffs have no property right to a potential future contract.

Based on the foregoing, the Court is unable to conclude that the Independent Service Coordination Plaintiffs are entitled to relief due to the Defendants' alleged failure to formally promulgate the rules contained within the independent service coordination notice of funding opportunity, as required by GATA and in violation of the IAPA. Given that a State is not required to obey its own procedural rules in awarding contracts, *see Kim Const. Co. Inc.*, 14 F.3d 1243, the Court has no basis to declare that the independent service coordination notice of funding opportunity is invalid and void. Additionally, the Independent Service Coordination Plaintiffs do not have a property interest that triggers constitutional due process protections.

For all of these reasons, therefore, the Court concludes that Plaintiffs have not shown a better than negligible chance of success on the merits. Accordingly, the Plaintiffs have not met the initial threshold that must be established for obtaining a preliminary injunction. The Plaintiffs' motion will be denied.

### III.    CONCLUSION

It goes without saying that this process could have been handled better by the State.  Moreover, it appears there has been little, if any, coordination between the various independent service coordination agencies to ease the transition for individuals with intellectual and development disabilities who are served by these agencies.  The Court is certainly hopeful there are no disruptions in service.

Based on the foregoing, the Court concludes that, because independent service coordinators do not provide medical assistance, the  Medicaid Free Choice provision does not apply and the Plaintiffs' claims are unlikely to succeed on the merits. Therefore, the Plaintiffs are not entitled to injunctive relief.

Ergo, the Motion of Plaintiffs for a Preliminary Injunction [d/e 16] is DENIED.

The Motion of Prairieland Service Coordination, Inc. to Intervene as of right [d/e 23] is GRANTED.

The Clerk will docket and file the Complaint in Intervention [d/e 23-1].

The Motion of Service Inc. of Illinois f/k/a Service of Will, Grundy and Kankakee Counties to Intervene as of right [d/e 31] is GRANTED.

The Clerk will docket and file the Complaint in Intervention [d/e 31-1].

ENTER: June 25, 2019

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge